AMERICAN TRUST & BANKING CO. *v.* ELIZABETH BALFOUR.
*et al.*

(*Knoxville.*   September Term, 1917.)

**1. WILLS.   "Specific legacy."**

Under will providing that if testator should die before his daughter had completed her education the school expenses should be paid out of life insurance policies named, and that the balance should be added to the trust fund hereinafter created for the use and benefit of the daughter, the bequest of the life insurance proceeds to the daughter was a "specific legacy," being a bequest of a specific article or particular fund or designated part of the testator's estate distinguished from all others of the same nature (citing Words and Phrases, Second Series, Specific Legacy.)   (*Post, pp.* 388-390.)

Cases cited and approved: Manlove v. Gaut, 2 Tenn. Ch. App., 410; Tipton v. Tipton, 41 Tenn., 252; Ashburner v. Macguire, 2 Bro. Ch., 108; Stout v. Hart, 7 N. J. Law, 414; McMahon's Estate, 132 Pa., 175; Leonard v. Harney, 173 N. Y., 352; Chase v. Lockerman, 11 Gill & J. (Md.), 185; Smith's Appeal, 103 Pa., 559; Barker v. Rayner, 5 Madd., 208.

Case cited and distinguished: Nusly v. Curtis, 36 Colo., 464.

**2. WILLS.   Specific legacy.   "Ademption."**

The bequest of the life insurance proceeds to the daughter being a specific legacy, where nearly two years after the execution of the will testator collected the cash surrender value of the policies and deposited the same in a savings account with other funds and later invested all in real estate mortgage notes which he held at the time of his death, there was an "ademption" of the bequest of the life insurance proceeds; an "ademption" of a specific le-

138  Tenn.—25

gacy being the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated, the doing of some act with regard to the subject-matter which interferes with the operation of the will. (*Post, pp.* 390-391.)

Cases cited and approved: In re Estate of Pruner, 222 Pa., 179; Gardner v. McNeal, 40 L. R. A. (N. S.), 553.

## FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —W. B. GARVIN, Chancellor.

RANKIN & FRAZIER, for appellant.

W. B. MILLER, TATUM, THACH & LYNCH and GEO. H. WEST, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The executor of the will of George T. Balfour filed the bill of complaint for a construction of the will in respect to the disposition it makes of two policies of insurance on the life of testator. The pertinent clauses of the will are as follows:

"(6) Should I die before my said daughter, Beulah Balfour, shall have completed her education, I direct that her tuition and school expenses be paid out of my life insurance policies in the Northwestern and the

Penn Mutual Life Insurance Companies; and that the balance of the money due to my estate under said policies be added to the trust fund hereinafter created for the use and benefit of my said daughter.

"(7)  I direct that the balance and remainder of my estate, of any and every kind whatsoever, whether real, personal or mixed, of which I may die seised and possessed, or to which I may be in any way entitled, shall be divided by my executor hereinafter named as nearly as may be in two parts.

"(8)  One of the two equal parts above provided for, I give and bequeath unto my wife, Elizabeth Balfour.

"(9)  The other equal portion of the remainder of my estate provided for, I give and bequeath unto American Trust & Banking Company, of Chattanooga, Tennessee, as trustee.  .  .  .  The balance of my life insurance money above referred to shall be added to said fund and constitute a part thereof."

The chancellor properly held that the education of the daughter, referred to in the sixth clause, was completed before the death of the testator.  The chancellor's ruling on this question of fact was not reversed by the Court of Civil Appeals.

There is, however, a sharp conflict between the chancellor and the court of civil appeals in regard to the proper disposition of the proceeds of the life insurance policies.

It appears that, nearly two years after executing the will, Balfour collected from the insurance companies

the amounts due on the policies, as the cash surrender values at that date, $2,942.30 from one company and $8,653.05 from the other. The sums, aggregating $11,-595.35, he deposited in his saving account in bank. These items, together with other funds already in that account, amounted to $13,000 or above; and a few days latter he invested $13,000 thereof in real estate mortgage notes which he held at the time of his death. The evidence does not disclose the number of the notes or their respective amounts, or how much of either of the policies' product went into the one or the other.

The chancellor held that the bequest of the life insurance proceeds to the daughter was a specific legacy, and that by the testator's realizing on and canceling the policies the legacy was adeemed, the mortgage notes then standing for equal division between the widow and daughter under clauses 8 and 9 of the will. The court of civil appeals was of opinion that the chancellor was in error, and held that the legacy was not specific, and that therefore there could be no ademption by such acts of the testator.

Is the legacy one specific in nature, so as to be subject to ademption?

A "specific legacy" is a bequest of a specific article or particular fund or designated part of the testator's estate, distinguished from all others of the same nature. *Manlove* v. *Gaut*, 2 Tenn. Ch. App., 410, 445; 4 Words and Phrases, Second Series, 651.

Counsel of the daughter stress in argument the fact that the policies were not bequeathed, as such, but that the proceeds, or balance of the proceeds thereof, were.

In *Tipton* v. *Tipton,* 1 Cold. (41 Tenn.), 252, a bequest of "the amount of the following notes: John Stephens, $293; Robert Porter's note, $488; Ruth & Lillard's, $385"—was held to be a specific legacy of the notes, or debts evidenced thereby.

In *Manlove* v. *Gaut,* supra, the bequest was of the "proceeds of the sale of the storehouse" (designated) left after paying the mortgage thereon, and it was ruled that it was a specific legacy.

A leading case dealing with a bequest of proceeds of life insurance policies is *Nusly* v. *Curtis,* 36 Colo., 464, 85 Pac., 846, 7 L. R. A. (N. S.), 592, 118 Am. St. Rep., 113, 10 Ann. Cas., 1134. It was there said:

"It will further be observed that this is not a gift of money 'out of' or 'from the proceeds of' any insurance policy, but it is a gift of the entire fund itself. It is just the same as if the policy itself had been bequeathed. . . . It has been held that a gift of all the money due on a particular bond is as much a specific legacy as a gift of the bond itself. The same principle is applicable to an insurance policy. A gift of an insurance policy is no more specific than is a gift of all the money due thereon. *Ashburner* v. *Macguire,* 2 Bro. Ch., 108; *Stout* v. *Hart,* 7 N. J. Law, 414; *McMahon's Estate,* 132 Pa., 175, 19 Atl., 68. So a bequest of all, or a part, of a specific fund or money, . . . was held to be specific (citing cases)."

See, also, *Leonard* v. *Harney,* 173 N. Y., 352, 66 N. E., 2; *Chase* v. *Lockerman,* 11 Gill & J. (Md.), 185, 35 Am. Dec., 277; *Smith's Appeal,* 103 Pa., 559; *Barker* v. *Rayner,* 5 Madd., 208 affirmed 2 Russ. Ch., 122.

A policy of life insurance as the subject-matter of a legacy is peculiarly individualized for distinction, issued as it is on the life of a given person in a particular company. Unlike stocks, bonds, and other securities, such a policy may not be acquired by purchase at will in open market by the testator or his personal representative to respond to and satisfy the bequest.

To test the nature of the bequest, let it be assumed that the testator had failed to pay the premiums, and that the policies had lapsed and no proceeds had been realized. Would the claimant legatee have a right to resort to the general estate for satisfaction? In what sum? We are of opinion that the chancellor was correct in holding the legacy specific in nature.

Was there an ademption of the legacy?

"Ademption" of a specific legacy is the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject-matter which interferes with the operation of the will.

In *Tipton* v. *Tipton,* supra, it was held, where the testator transferred the Ruth & Lillard note of $385 to his son, taking the note of the latter for the same amount, and the son's note was held by testator at the time of his death, an ademption was effected.

In *Nusly* v. *Curtis,* supra, it was rulled that the legacy of the proceeds of the policies was adeemed by the collection of the fund by the testator and her commingling same with her other funds.   The same principle was enforced in *Re Estate of Pruner,* 222 Pa., 179, 70 Atl., 1000, 40 L. R. A. (N. S.), 561, and *Barker* v. *Rayner,* supra.

These and many other authorities illustrate the rule that a specific legacy is adeemed when there has been a material alteration or change in the subject-matter, and that the property into which it was converted in such change cannot be substituted as or for the specific bequest.   See cases collected in note to *Gardner* v. *McNeal,* 40 L. R. A. (N. S.), 553.

The chancellor's decree on both points finds full support in *Tipton* v. *Tipton,* supra, and the principles of that case are supported by the authorities in other jurisdictions.   We therefore reverse the decree of the court of civil appeals and affirm that of the chancellor.