J-A04018-18
J-A04019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SCOTT MATTHEW STANLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NEIL E. HENDERSHOT, | : | No. 814 MDA 2017 |
| INDIVIDUALLY AND AS EXECUTOR | : | |
| OF THE ESTATE OF EDWARD A. | : | |
| STANLEY | | |

Appeal from the Order Entered April 17, 2017
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2016-CV-07291-EQ

| | | |
|---|---|---|
| IN RE: ESTATE OF EDWARD A. | : | IN THE SUPERIOR COURT OF |
| STANLEY, DECEASED | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: SCOTT MATTHEW | : | |
| STANLEY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1089 MDA 2017 |

Appeal from the Order Entered June 8, 2017
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  2216-0580

BEFORE: STABILE, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:  **FILED MAY 18, 2018**

Appellant Scott Matthew Stanley ("Plaintiff") appeals from the orders

sustaining the preliminary objections of Appellee Neil E. Hendershot, Esq.,

---

[*] Retired Senior Judge assigned to the Superior Court.

individually ("Individual") and as executor ("Executor") of the estate of Edward A. Stanley ("Decedent"), which were filed in two separate actions, docketed at 2016-CV-07291-EQ ("7291-EQ") and 2216-0580.[1]  Plaintiff claims that the trial court and Orphans' Court erred in dismissing with prejudice his claims (1) seeking damages for withholding personal property and payment for services rendered and (2) challenging the probate of the Will.  We affirm the orders in part, reverse in part, and remand for further proceedings, as set forth in further detail below.

We state the facts as alleged in the civil complaint and petition for citation *sur* appeal in the Orphans' Court.[2]  Plaintiff and Decedent, his father, were estranged, and Plaintiff lived in Kansas.  In 2010, during this period of estrangement, Decedent executed a Will ("2010 Will") leaving his entire estate

---

[1] Because the appeals at docket numbers 814 MDA 2017 and 1089 MDA 2017 are related, we dispose of both appeals in this decision.  Further, to the extent Appellee's role as executor or individual is not pertinent, we refer to him as "Defendant."

[2] Because of the procedural posture, we accept as true the facts alleged in both pleadings.  *See Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa. Super. 2008) (indicating that "all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true" for the purposes of appellate review of a trial court's sustaining of preliminary objections in the nature of a *demurrer* (brackets and citation omitted)); *In re Estate of Luongo,* 823 A.2d 942, 951 (Pa. Super. 2003) (noting that when reviewing an orphans' court's ruling on preliminary objections in the nature of a *demurrer* in the context of a Will contest, the appellate court accepts as true the well-pleaded factual averments).

to Plaintiff. The parties subsequently reconciled and in 2011, Plaintiff moved from Kansas to Pennsylvania to live with and care for Decedent. Plaintiff alleged that in exchange for moving into Decedent's home and caring for Decedent, Decedent agreed to leave his entire estate to Plaintiff. Although Decedent had previously executed the 2010 Will leaving all of his estate to Plaintiff, Plaintiff claimed that Decedent executed a new Will in November 2011 ("2011 Will"), which again left his complete estate to Plaintiff in accordance with their agreement.[3]

Beginning in the fall of 2012, the relationship between Plaintiff and Decedent again deteriorated. Decedent filed for a protection from abuse order against Plaintiff in the spring of 2013. Plaintiff left Decedent's home and took some, but not all, of his possessions with him. In May of 2013, Decedent executed a Will ("2013 Will") that disinherited Plaintiff (as well as Decedent's brother and his family and the siblings of Decedent's late wife), and appointed Defendant as Executor. R.R., 814 MDA 2017, at 58-59.[4]

The 2013 Will, which was prepared by Defendant, acknowledged that some of the property in Decedent's home belonged solely to Plaintiff. *Id.* at 57. The 2013 Will identified some of Plaintiff's personal property but did not

---

[3] Plaintiff alleged he did not have a copy of this November 2011 Will and thus could not attach it to his complaint. Compl., No. 7291-EQ, 9/26/16, at ¶ 20.

[4] We cite to the reproduced records that were filed in these appeals for the parties' convenience.

purport to be an inclusive list. *Id.* The 2013 Will then disposed of Decedent's estate, including Decedent's personal property, the majority of which was to be sold. *Id.* at 58. The 2013 Will also provided that Plaintiff, among other things, was not entitled "to receive any notice as to its administration." *Id.*

Decedent died in June 2016, and on June 24, 2016, the Register of Wills admitted the 2013 Will to probate and granted letters testamentary to Defendant. Shortly thereafter, Plaintiff contacted Defendant about, among other issues, his personal property left at Decedent's home. *Id.* at 9. According to Plaintiff, Defendant indicated Plaintiff "would not be permitted to access the Decedent's home or review the property in the home," and Defendant would comply with the terms of the 2013 Will. *Id.* at 10. Plaintiff learned that an estate sale was scheduled for October 1, 2016. *Id.* at 7. As a result, Plaintiff filed two lawsuits, one civil and the other in the Orphans' Court.

**Plaintiff's Claims in the Civil Action at 814 MDA 2017**

On September 26, 2016, Plaintiff filed the civil complaint in this matter at docket no. 7291-EQ, which sued Defendant both as Individual and as Executor of Decedent's estate. Plaintiff raised five claims: breach of contract,

promissory estoppel, conversion, unjust enrichment (pled in the alternative), and injunctive relief.[5]

In support of his breach of contract claim, Plaintiff alleged that in "exchange for Plaintiff's agreement to move into Decedent's home and provide care for him, Decedent agreed to leave his estate to Plaintiff and had, in fact, done so in his 2010 Will." Compl., No. 7291-EQ, 9/26/16, at ¶ 51. Plaintiff acknowledged that the 2013 Will contradicted Decedent's alleged oral promise, but maintained that the 2010 and 2011 Wills evidence it. *Id.* at ¶¶ 6, 20, 35. Plaintiff contended that Defendant, as Executor, was obligated to effectuate performance of their agreement. *Id.* at ¶ 53. Plaintiff also raised a substantially similar claim of promissory estoppel. *Id.* at ¶¶ 59-66.

For his claim of conversion, Plaintiff alleged that because he could not retrieve his personal property, Defendant "has wrongfully, without privilege, knowingly and willingly exerted possession and control over Plaintiff's personal property to the exclusion and damage of Plaintiff." *Id.* at ¶ 70. The complaint also alleged that some of Plaintiff's personal property remained in Decedent's

---

[5] Plaintiff also filed a motion for a preliminary injunction, seeking to stay a sale of Decedent's home and its contents (scheduled for October 1, 2016), and to access the home so he could retrieve his belongings. Plaintiff and Individual agreed that the motion was rendered moot after the estate agreed to postpone the sale. Plaintiff's Brief, 814 MDA 2017, at 7; Individual's Brief, 814 MDA 2017, at 5 n.1. Executor did not disagree.

- 5 -

home. *Id.* at ¶¶ 30, 68; R.R., 814 MDA 2017, at 57 (2013 Will listing some of Plaintiff's personal property).

With respect to unjust enrichment, Plaintiff claimed that "Decedent's estate has obtained the benefit of the actions and services of Plaintiff . . . as well as the benefit of the personal property of Plaintiff, without fair and just compensation to Plaintiff to which Plaintiff is reasonably entitled."  Compl., No. 7291-EQ, 9/26/16, at ¶ 72.  Thus, Plaintiff sought compensation both for the services he rendered to Decedent, as well as the benefit provided by his personal property.  *Id.* at ¶¶ 72-73.

### Defendant's Two Sets of Preliminary Objections in the Civil Action at 814 MDA 2017

For the civil lawsuit, Defendant filed two sets of preliminary objections: one, as Executor, and the other, as Individual.

*Executor's Preliminary Objections in the Civil Action*

For the breach of contract claim, Executor contended that the claim failed because it was legally insufficient and did not confirm to law of the court. *See* Pa.R.C.P. 1028(a)(2), (4).  Executor argued that 20 Pa.C.S. § 2701 of Pennsylvania's Probate, Estates, and Fiduciaries Code[6] abolished any common law cause of action for breach of oral contract.  R.R., 814 MDA 2017, at 69.

---

[6] We quote the statute below.

Executor also objected to Plaintiff's failure to attach a copy of a written contract to its complaint. ***Id.*** at 70.

With respect to Plaintiff's promissory estoppel claim, Executor asserted that promissory estoppel sounds in contract. ***Id.*** at 71. Thus, Executor argued that this claim was similarly barred by 20 Pa.C.S. § 2701, and was legally insufficient. ***Id.***

As for Plaintiff's conversion and unjust enrichment claims, Executor asserted that under 20 Pa.C.S. § 711(1), the Orphans' Court had "exclusive jurisdiction over the administration and distribution of the real and personal property of decedents' estates." ***Id.*** at 72, 74.[7]

Executor did not raise a preliminary objection to Plaintiff's last claim for injunctive relief.

*Individual's Preliminary Objections in the Civil Action*

Initially, Individual raised two general objections. First, Individual objected because Plaintiff never served the complaint on him properly, ***id.*** at 87, and second, the Orphans' Court had exclusive jurisdiction over all of Plaintiff's claims against him under 20 Pa.C.S. § 711(1). ***Id.*** at 88.

---

[7] We recognize that Executor's brief in support of his preliminary objections raised an entirely new objection not present in the preliminary objections themselves: Plaintiff failed to plead sufficient facts for a conversion claim because he failed to identify the chattels to which he claimed ownership. R.R., 814 MDA 2017, at 116. Executor did not file or request permission to file an amended preliminary objection.

- 7 -

With respect to Plaintiff's breach of contract claim, Individual objected on the basis that 20 Pa.C.S. § 2701 barred that cause of action and that Plaintiff lacked standing to bring it. *Id.* at 92. For Plaintiff's promissory estoppel, conversion, and unjust enrichment claims, Individual objected to Plaintiff's failure to plead one or more of the required elements. *Id.* at 94-96.[8] Specifically, for conversion, Individual claimed that Plaintiff "failed to allege any lawful ownership right such that there can even be a plausible claim for conversion." *Id.* at 95. Individual did not specifically object to Plaintiff's last claim for injunctive relief.

Because the trial court, in one order, resolved three sets of preliminary objections filed in two separate lawsuits, we discuss the Orphans' Court lawsuit next.

**Plaintiff's Claims in the Orphans' Court Action at 1089 MDA 2017**

Also on September 26, 2016, in the Orphans' Court, Plaintiff filed a petition for citation *sur* appeal from the June 24, 2016 decree by the Register of Wills, which raised three claims. Plaintiff's Appeal From Decree of Register of Wills, 9/26/16, at 1.[9] First, Plaintiff claimed that Decedent lacked the testamentary capacity to execute the 2013 Will disinheriting Plaintiff. Second,

_____

[8] Individual also objected to Plaintiff's prayer for counsel fees as contrary to law. R.R., 814 MDA 2017, at 97-98.

[9] We cite to the documents filed at docket no. 2216-0580 in the Orphans' Court.

- 8 -

Plaintiff asserted entitlement to relief based on promissory estoppel, identical to his promissory estoppel claim in the civil action, but which did not challenge the validity of the 2013 Will. Third, Plaintiff raised a claim of conversion of his personal property against the estate.

In his claim of conversion, Plaintiff alleged that the estate sale, then scheduled for October 1, 2016, was going to sell all property within Decedent's home, including Plaintiff's personal property. R.R., 1089 MDA 2017, at 9-10. Plaintiff asserted that if his property was sold, and the proceeds retained by the estate, the estate would have wrongfully converted his property. *Id.* at 10. Plaintiff therefore requested that under 20 Pa.C.S. § 764, the court issue a citation to all parties in interest to show cause why the appeal should not be granted and the June 24, 2016 decree of the Register of Wills set aside. *Id.*

*Executor's Preliminary Objections in the Orphans' Court Action*

On November 3, 2016, Executor filed preliminary objections to the promissory estoppel and conversion claims. Executor first objected to the promissory estoppel claim on the basis that 20 Pa.C.S. § 908 limited appeals to the validity of the Will. *Id.* at 62. Executor reasoned that because Plaintiff's claim of promissory estoppel did not challenge the validity of the 2013 Will, the count should be stricken. *Id.* Executor argued that Plaintiff's promissory estoppel claim should be raised as an objection under Orphans' Court Rule 2.7. *Id.* Alternatively, Executor reasoned that if such a claim was proper, then the claim was legally insufficient because 20 Pa.C.S. § 2701 bars it and

Plaintiff failed to attach a written contract to his petition. *Id.* at 63-64.

Second, Executor similarly objected to Plaintiff's conversion claim on the basis

of Section 908 because such a claim did not attack the 2013 Will's validity.

*Id.* at 64-65.

**Trial Court's Order Resolving All Three Sets of Preliminary Objections**

After Plaintiff filed responses to all three sets of preliminary objections,

the court held oral argument on March 31, 2017. At oral argument, with

respect to the conversion and unjust enrichment claims, counsel for Individual

argued that there was "a letter from [Plaintiff's] former counsel indicating that

[he] has already retrieved all those materials." N.T. Hr'g, 3/31/17, at 6.

Plaintiff's counsel countered as follows:

> The allegations or the arguments that have been made here this morning about property being turned over, those are outside the record. Those are not included in the pleadings. And they're evidence and information that is not within the [c]ourt's purview this morning. I believe that the—for the reasons stated in the brief, the elements of conversion and unjust enrichment have been fully stated.

*Id.* at 9-10.

> Individual's counsel rebutted:

> It is known to [Plaintiff] that he, in fact, received all of the property listed in the Will and, in fact, we have the letter from his former counsel that specifically says that. So it's my understanding that [Plaintiff] has retrieved all uncontested personal items from [Decedent's] home and no longer has any reason or desire to have contact with him. [Plaintiff] can't hide behind facts that are known to them [sic] and plead that it's [sic] outside the four corners of the complaint.

*Id.* at 11.[10]

At the hearing, Plaintiff withdrew the breach of contract and promissory estoppel claims against Individual in 7291-EQ. *Id.* at 10; Plaintiff's Brief, 814 MDA 2017, at 8. The court ordered the parties to file additional memoranda of law and proposed orders within twenty days. N.T. Hr'g, 3/31/17, at 14-15. The docket and record do not reflect any such filings. Before the twentieth day passed, however, the court issued a single order on April 17, 2017, which although disposing of all three sets of preliminary objections, was docketed only in the civil action at 7291-EQ. We summarize the court's order below.

*Order Resolving Civil Action Claims Against Executor*

With respect to Plaintiff's claims against Executor in 7291-EQ, the court sustained Executor's objection to the breach of contract claim on the basis that Executor was not a party to the contract. Order, 4/17/17, at 2 (unpaginated). The court sustained the objection to Plaintiff's promissory estoppel and unjust enrichment claims without explanation. *Id.* at 2-3. As for Plaintiff's conversion claim, the court sustained the objection because it found that Plaintiff "has received the property to which he is entitled."[11] *Id.*

_____

[10] No party filed any pleading or amended any pleading attaching this letter.

[11] We acknowledge that the court's order stated **Defendant** (not Plaintiff) had received the property. Order, 4/17/17, at 2.

at 3. The court, although it did not explicitly resolve the claim for injunctive relief, dismissed the civil complaint in its entirety against Executor.[12] *Id.*

The court's order did not address Executor's assertion that only the Orphans' Court had jurisdiction over Plaintiff's conversion and unjust enrichment claims. *See generally* R.R., 814 MDA 2017, at 72, 74.

*Order Resolving Civil Action Claims Against Individual*

With respect to the claims against Individual in 7291-EQ, the court overruled the objection of improper service but sustained the objection that the Orphans' Court had jurisdiction. Order, 4/17/17, at 1. It then ordered that the civil action docket "shall be consolidated with the docket currently pending in the Orphan's Court."[13] *Id.* The trial judge in 7291-EQ, although

---

[12] At the hearing, the parties did not address Plaintiff's claim for injunctive relief. Given that the then-scheduled October 1, 2016 estate auction—which formed the basis for Plaintiff's injunctive relief claim and motion for a preliminary injunction—was postponed, it would appear that Plaintiff's claim has been resolved by the parties' agreement.

[13] It is unclear whether the court intended for these two actions to retain their separate identities or had a different intent, such as transferring the matter. *See generally* Pa.R.C.P. 213; 42 Pa.C.S. § 5103 (addressing transfer of erroneously filed matters). Given that Plaintiff appealed from the April 17th order on May 17, 2017, it does not appear that he construed the court's "consolidation" order as eliminating the separate identity of the civil action. It would have been more preferable to transfer the matter to the orphans' court division. *See* 42 Pa.C.S. § 5103.

concluding it lacked jurisdiction, nonetheless proceeded to rule on the outstanding objections that the Orphans' Court should have addressed.[14]

The court sustained the preliminary objection for Plaintiff's conversion claim because it found Plaintiff "had received the property to which he is entitled." *Id.* at 2. It similarly sustained the preliminary objection for Plaintiff's unjust enrichment claim but provided no reasoning. *Id.* Although the court did not address the outstanding claim for injunctive relief, it similarly dismissed Plaintiff's complaint in its entirety as to his claims against Individual.

In sum, after this order, the only outstanding count remaining in either action was the claim for lack of testamentary capacity in the Orphans' Court action. The court, despite not resolving the outstanding testamentary

---

[14] In this case, we acknowledge that the trial judge presiding over the civil action also presided over the Orphans' Court action. Out of judicial economy, we deem it appropriate to presume that for this order, the trial judge "switched hats" and, acting in its capacity as an Orphans' Court judge, resolved the outstanding objections for Plaintiff's civil (now Orphans' Court) claims against Individual. Indeed, as discussed below, the same order—although docketed only in the civil action—also resolved Executor's preliminary objections to the petition for citation *sur* appeal in the Orphans' Court action. It would have been more procedurally appropriate to transfer the matter to the Orphans' Court and file a separate order resolving the outstanding objections under the Orphans' Court docket to forestall any jurisdictional, finality, or appealability issues. *See generally* 42 Pa.C.S. § 5103; *In re Estate of Ciuccarelli*, 81 A.3d 953, 961 (Pa. Super. 2013) (holding civil division erred by dismissing various claims both with and without prejudice, instead of transferring the matter to Orphans' Court).

capacity claim, nonetheless dismissed with prejudice Plaintiff's petition for citation *sur* appeal.[15] ***Id.*** at 3.

On May 17, 2017, Plaintiff filed a timely notice of appeal from the order disposing of his claims in 7291-EQ and a timely court-ordered Pa.R.A.P. 1925(b) statement.[16]

### Subsequent Procedural History in the Orphans' Court Action at 1089 MDA 2017

On May 25, 2017, Executor filed an answer to Plaintiff's claim for lack of testamentary capacity, and served the answer on all beneficiaries, thereby "placing the beneficiaries of the Estate on notice as an opportunity for those beneficiaries to defend, substantively, their respective interests under the 2013 Will . . . ." R.R., 1089 MDA 2017, at 98. Executor's answer noted that although he did not file preliminary objections to Plaintiff's testamentary capacity claim, the Orphans' Court nonetheless dismissed Plaintiff's petition for citation *sur* appeal with prejudice. ***Id.*** at 97, 105 (attaching copy of court's April 17, 2017 order).

---

[15] Because of the outstanding claim, the order could not have been construed as an appealable Orphans' Court order to the extent it addressed Plaintiff's petition for citation *sur* appeal. ***See generally*** Pa.R.A.P. 341-342.

[16] On May 22, 2017, Plaintiff filed an emergency application for injunctive relief and stay pending appeal, which claimed that Defendant had scheduled several sales of the estate's personal property. The court granted the application later that day. Order, 2016-CV-7291-EQ, 5/22/17.

Executor proceeded to discuss a memorandum purportedly written by Decedent that allegedly bolsters the legitimacy of the 2013 Will:

23. In view of the Petition and the rights of the beneficiaries to defend the 2013 Will, the Memorandum is crucial to the record, since it would qualify as a codicil ratifying the 2013 Will and expanding upon it, as evidenced by its introductory provision:

I now am 84 years old and inasmuch as I don't want to leave anything that is legally mine through inheritance or outright purchase to any family members it is important that the following information be made available to the executor of my estate and others. Most of my wishes are stated in my latest will dated May 3, 2013. However, there are some additional items as an afterthought that I wish to be done after I am no longer on this earth.

24. The Executor requests that the Petitioner be required to serve notice of his Petition to all named charitable beneficiaries under the 2013 Will.

*Id.* at 99. Executor did not seek dismissal of the claim for testamentary capacity, but requested that the court resolve the claim "after [a] **hearing** involving [the] parties in interest that determine to participate, after service of the Petition and this Answer." *Id.* at 100 (emphasis added).

On June 8, 2017, the Orphans' Court—although no motion was before it—ordered as follows:

[U]pon consideration of the Answer filed by [Defendant] as Executor to Count I of the Petition for Citation Sur Appeal from Register's Decree of Probate, and in light of this Court's Order of April 17, 2017 (Exhibit A), dismissing the Petition for Citation Sur Appeal with Prejudice, it is HEREBY ORDERED that Count I of the Petition for Citation Sur Appeal is dismissed with prejudice.

*Id.* at 124.[17]  Attached to the order as exhibit A was a copy of the civil action court's April 17, 2017 order.

Plaintiff filed a timely notice of appeal on Monday, July 10, 2017.  The Orphans' Court did not order a Pa.R.A.P. 1925(b) statement.

### Plaintiff's Appeal in the Civil Action at 814 MDA 2017

Plaintiff raises the following issues:

1. Whether the trial court erred in granting preliminary objections in the nature of a demurrer to Plaintiff's claims alleging conversion and unjust enrichment where it failed to resolve the issues solely on the basis of the face of the complaint and considered factual evidence outside of the face of the complaint to dispose of legal issues presented by the demurrer?

2. Whether the trial court erred in granting preliminary objections in the nature of a demurrer to Plaintiff's breach of contract claim where the executor of an estate stands in the shoes of the decedent and can be sued on the basis of a contract made by the decedent prior to the decedent's death?

3. Whether the trial court erred in granting the preliminary objection in the nature of demurrer to the Plaintiff's promissory estoppel claim where the executor of an estate stands in the shoes of the decedent?

Plaintiff's Brief, 814 MDA 2017, at 6.

---

[17] In **Baker v. Valley Forge Ins. Co.**, 526 A.2d 434 (Pa. Super. 1987), this Court noted that it was improper to *sua sponte* dismiss a complaint before a defendant filed a preliminary objection or answer.  **Id.** at 438; **see Bell v. Rockview State Corr. Facility**, 620 A.2d 645, 647 (Pa. Cmwlth. 1993) (stating, "Our Supreme Court has held that where a demurrer is not raised as a preliminary objection, a trial court may not dismiss a complaint by deciding *sua sponte* that the complaint fails to state a cause of action.  **Luitweiler v. Northchester Corp.**, 456 Pa. 530, 319 A.2d 899 (1974).").

**Plaintiff's First Issue in the Civil Action at 814 MDA 2017**

In support of his first issue, Plaintiff raises two categories of arguments: the first, for his claims of conversion and unjust enrichment against Executor, and the second, for those same claims against Individual. We briefly state the applicable standard of review, which applies to both categories:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Weinar v. Lex*, 176 A.3d 907, 925 (Pa. Super. 2017) (citation omitted); *Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa. Super. 2008) ("In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it **cannot** supply a fact missing in the complaint" (emphasis added)). However, "[f]acts in documents appended to a pleading are to be considered in assessing the pleading's sufficiency." *Retina Assocs. of Greater Philadelphia, Ltd. v. Retinovitreous Assocs., Ltd.*, 176 A.3d 263,

281 (Pa. Super. 2017). "If an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(b)(2).

*Civil Action Claims of Conversion and Unjust Enrichment Against Executor*

As noted above, Plaintiff alleged that some of his personal property remained in Decedent's home and that Defendant, both as Individual and as Executor, wrongfully exercised possession and control over such property. Compl., No. 7291-EQ, 9/26/16, at ¶¶ 68-70. Executor had filed preliminary objections arguing, among other things, that the Orphans' Court had exclusive jurisdiction over these claims. R.R., 814 MDA 2017, at 72, 74.

On appeal, Plaintiff, in a brief argument, contends that the civil division of the trial court could exercise jurisdiction. Plaintiff's Brief at 12-13. Plaintiff did not cite or discuss any legal authority in support of that proposition.

"It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*." **Estate of Gentry v. Diamond Rock Hill Realty, LLC**, 111 A.3d 194, 198 (Pa. Super. 2015) (brackets and citation omitted). As the Pennsylvania Supreme Court in **In re Crisswell's Estate**, 5 A.2d 577 (Pa. 1939), stated, "[t]he jurisdiction of the orphans' court over the settlement and distribution of decedents' estates is exclusive, and necessarily includes the power to determine all questions essential thereto." **Id.** at 579.

Section 711 of the Probate, Estates and Fiduciaries Code follows:

**§ 711. Mandatory exercise of jurisdiction through orphans' court division in general**

- 18 -

> Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following **shall** be exercised through its orphans' court division:
>
> **(1) Decedents' estates.—**The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.

20 Pa.C.S. § 711 (emphasis added);[18] *In re Estate of Ciuccarelli*, 81 A.3d at 958 (holding, "the Orphans' Court Division has exclusive jurisdiction of the administration and distribution of decedents' estates, of the control of estate fiduciaries, and of the settlement of their accounts." (quotation marks and citations omitted)). The *Cicuccarelli* Court observed, it "is well-settled that the court of common pleas, even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the Orphans' Court." *Cicuccarelli*, 81 A.3d at 961-62 (internal quotation marks, brackets, and citation omitted).

Here, Plaintiff sued Executor for allegedly converting his personal property in Decedent's home by preventing him from entering Decedent's home to recover such property. Plaintiff also claimed that Decedent's estate obtained the benefit of his services and personal property such that it was unjustly enriched. Compl., No. 7291-EQ, 9/26/16, at ¶¶ 71-73. Because

---

[18] It is well-settled that the word "shall", when used in a statute, is defined as mandatory. *Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 150 (Pa. 1997).

Plaintiff's claims implicate Executor's administration and distribution of Decedent's estate (as he is the executor), Section 711(1) divests the civil division of jurisdiction. *See* 20 Pa.C.S. § 711. The civil action court had no jurisdiction to resolve Plaintiff's claims and thus did not err as a matter of law by granting Executor's preliminary objections on Plaintiff's conversion and unjust enrichment claims. *See Weinar*, 176 A.3d at 925.

The civil action court, however, upon concluding it lacked jurisdiction, did not transfer the case. *See* 42 Pa.C.S. § 5103. Instead, the civil action court ordered that the two dockets be "consolidated" and elected to also resolve the preliminary objections to Plaintiff's conversion and unjust enrichment claims against Executor in the same order.

By wearing its "Orphans' Court hat," the court unfortunately confused the record. The court did not recognize that Executor only objected on the basis of jurisdiction and overlooked that Executor raised his argument—that Plaintiff failed to plead any lawful ownership right—for the first time in his brief in support of his preliminary objections to this claim. *See* note 7, *supra*. The court also overlooked that Executor did not file any amended preliminary objections raising that argument.

Rather, in its April 17, 2017 order resolving all three sets of preliminary objections, the court sustained Executor's preliminary objection to Plaintiff's conversion claim on the basis that he had already received his personal property. Order, 4/17/17, at 2; *see also* N.T. Hr'g, 3/31/17, at 9-11. Then,

in its Rule 1925(a) opinion, the court refers to Executor's unpreserved argument—raised for the first time in his brief in support of the preliminary objections—that Plaintiff failed to plead any lawful ownership right. Trial Ct. Op., 7/6/17, at 3. Because the court, in its role as Orphans' Court, deemed Executor's preliminary objection properly before it, we address it.

Plaintiff, on appeal, argues that the complaint references his personal property and alleges Executor denied him permission to enter Decedent's home to retrieve that property. Appellant's Brief at 14. Plaintiff also takes issue with the court's decision to exceed its scope of review and conclude, as a matter of fact, that he has received his property. **Id.**

"Conversion is defined under Pennsylvania law as[] the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." **McKeeman v. Corestates Bank, N.A.**, 751 A.2d 655, 659 n.3 (Pa. Super. 2000) (internal quotation marks and citations omitted).

Instantly, we agree with Plaintiff that his complaint adequately alleged the elements of conversion: he had personal property remaining in Decedent's home and that Executor deprived him of his right to possess such property. **See** Compl., No. 7291-EQ, 9/26/16, at ¶¶ 68-70; **McKeeman**, 751 A.2d at 659 n.3. Furthermore, the Orphans' Court erred in exceeding its limited scope of review and finding, as a matter of fact, that Plaintiff had received his personal property without any evidence. **See** Pa.R.Civ.P. 1028(b)(2);

- 21 -

***Weinar***, 176 A.3d at 925; ***Lerner***, 954 A.2d at 1235.  Indeed, nowhere in the relevant pleadings was there any letter from Plaintiff's former counsel that he had "retrieved all uncontested personal items from [Decedent's] home." N.T. Hr'g, 3/31/17, at 11.  The Orphans' Court erred as a matter of law in holding otherwise and thus we reverse its order sustaining the Executor's preliminary objections to Plaintiff's conversion claim.[19]

Plaintiff also challenges the court's disposition of his unjust enrichment claim against Executor.  He begins his argument with the premise that Executor stands in the shoes of Decedent.  Plaintiff's Brief, 814 MDA 2017, at 14 (citing ***Gray v. Henderson***, 71 Pa. 368 (1872)).  Plaintiff maintains that he provided benefits and services for Decedent in exchange for Decedent's

---

[19] Moreover, the letter was not made part of the record, although Executor included it in a supplemental record to his appellate brief.  "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the [certified] record in this case." ***Bennyhoff v. Pappert***, 790 A.2d 313, 318 (Pa. Super. 2001) (citation omitted); ***see also*** Pa.R.A.P. 1921 cmt. (stating that "where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court."). But even if this letter could have been appropriately considered by the trial court, the letter provides no basis to sustain the preliminary objection.  The letter, written by counsel, states, in relevant part, that "It is my understanding that [Plaintiff] has retrieved all uncontested personal items from [Decedent's] home." Suppl. R.R. at 17.  At face value, the letter merely reflects counsel's knowledge and lacks any substantive value in resolving the legal sufficiency of Plaintiff's complaint and Defendant's *demurrer*.  Indeed, there is no 18 Pa.C.S. § 4904 verification.  Furthermore, even if it could have been considered by the court, the letter merely stated that Plaintiff retrieved all "**uncontested** personal items." ***Id.*** (emphasis added).

promise to name him the sole heir. *Id.* at 15. Plaintiff contends that Defendant[20] knew of this promise and knew Plaintiff was caring for Decedent. *Id.* It would be inequitable, Plaintiff opines, if Decedent's estate retained the benefit of his services without compensation.[21] *Id.*

In *Styer v. Hugo*, 619 A.3d 347 (Pa. Super. 1993), this Court summarized the doctrine of unjust enrichment:

> Unjust enrichment is essentially an equitable doctrine. The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is **unjust**. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.
>
> Where unjust enrichment is found, the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant. This contract, referred to as either a quasi-contract or a contract implied in law, requires that the defendant pay the plaintiff the

---

[20] Appellant's appellate argument was not clear as to whether he was referring to the Defendant in his role as Executor or Individual, or both.

[21] Although Plaintiff's complaint alleged Defendant was unjustly enriched by retaining his personal property, Compl., No. 7291-EQ, 9/26/16, at ¶ 72, he has limited his appellate argument to the services he provided to Decedent.

value of the benefits conferred, i.e. that the defendant make restitution to the plaintiff in quantum meruit.[22]

*Id.* at 350 (quotation marks and citations omitted).

Quasi-contracts, or contracts implied in law are to be distinguished from express contracts or contracts implied in fact. Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Quasi-contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention.

*Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969) (citations, quotation marks, and alterations omitted).

The application of unjust enrichment, however, cannot contravene the law. "[A] court of equity follows and is bound by rules of law, and does not use equitable considerations to deprive a party of his rights at law." *Murray v. Willistown Twp.*, 169 A.3d 84, 93 (Pa. Super. 2017) (quoting *Bauer v. P.A. Cutri Co. of Bradford*, 253 A.2d 252, 255 (Pa. 1969)). "Equity provides remedies where the law has established a right but not an adequate remedy. In fashioning the remedy, however, equity must follow the law." *Mazur v.*

---

[22] "*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 531 n.8 (Pa. 2010).

- 24 -

*Trinity Area Sch. Dist.*, 926 A.2d 1260, 1268 n.10 (Pa. Cmwlth. 2007);[23]

*Murray*, 169 A.3d at 93 ("Equity must follow the law.").

Pennsylvania law provides that a contract to make a provision in a Will must be in writing. Specifically, 20 Pa.C.S. § 2701(a) provides:

> **(a) Establishment of contract.—**A contract to die intestate or to make or not to revoke a will or testamentary provision or an obligation dischargeable only at or after death can be established in support of a claim against the estate of a decedent only by:
>
> (1) provisions of a will of the decedent stating material provisions of the contract;
>
> (2) an express reference in a will of the decedent to a contract and extrinsic evidence proving the terms of the contract; or
>
> (3) a writing signed by the decedent evidencing the contract.

20 Pa.C.S. § 2701(a).

The comment to Section 2701 explains the purpose:

> It is the purpose of this section to tighten the methods by which contracts concerning succession may be proved. Oral contracts not to revoke wills have given rise to much litigation in a number of states . . . .
>
> This section requires that either the will must set forth the material provisions of the contract, or the will must make express reference to the contract and extrinsic evidence proving the terms of the contract, or there must be a separate writing signed by the decedent evidencing the contract. Oral testimony regarding the contract is permitted if the will makes reference to the contract,

---

[23] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *Mariner Chestnut Partners*, 152 A.3d at 283 n.12 (citation omitted).

but this provision of the statute is not intended to affect normal rules regarding admissibility of evidence.

*Id.* cmt. Simply, a contract to make a testamentary provision, *e.g.*, to make a person the sole heir of the estate, must be in writing. *Id.*

In *In re Estate of Balter*, 703 A.2d 1038 (Pa. Super. 1997), the appellant, a close friend of the testator, made a demand on the estate for a ring based on an alleged oral contract with the decedent. *Id.* at 1039. The trial court, in granting judgment on the pleadings, concluded that the appellant failed to establish any one of the Section 2701 requirements. *Id.* at 1040. The trial court held that "no provision of Decedent's Will either refers to a contract with appellant, nor does the Will contain material provisions of such a contract; and appellant has produced no writing evidencing the contract." *Id.* (brackets, citations, and quotation marks omitted). The *Balter* Court agreed the trial court properly applied Section 2701 because "the will contain[ed] no explanation of the terms of the alleged contract nor any express reference to the existence of an oral contract. Furthermore, [the] appellant has not produced any writing signed by the decedent evidencing the existence of such a contract."[24] *Id.* at 1041 (citations omitted).

---

[24] In *Wall's Appeal*, 5 A. 220 (Pa. 1886), the Pennsylvania Supreme Court reiterated that "a parol contract of a decedent to give the plaintiff a certain portion of his estate in consideration of services rendered, even if capable of being enforced, can only be when clearly proved by direct and positive evidence, and when its terms are definite and certain." *Id.* at 224 (summarizing *Graham v. Graham's Executors*, 34 Pa. 475 (Pa. 1859)). The

In sum, Section 2701 requires that a contract to designate a person as the sole heir to be in writing.  20 Pa.C.S. § 2701(a) & cmt.  The statute sets forth specific requirements for recovery, and a party must comply with those requirements in order to establish a right to a remedy.  *See* 20 Pa.C.S. § 2701; *see also Mazur*, 926 A.2d at 1268 n.10.  In contrast, unjust enrichment is essentially an equitable doctrine that cannot deprive a party of preexisting legal rights or otherwise contravene the law.  *See Murray*, 169 A.3d at 93; *Mazur*, 926 A.2d at 1268 n.10.  Any circumvention of Section 2701's requirements by invoking an equitable doctrine—such as unjust enrichment—deprives a party of its Section 2701 rights.  *See Murray*, 169 A.3d at 93.  Thus, as a matter of law, any unjust enrichment claim, raised in the alternative to a breach of contract claim, must fail as legally insufficient when the breach of contract claim requires compliance with Section 2701.  *See id.*  To hold otherwise simply renders Section 2701 meaningless.

Here, Plaintiff's unjust enrichment claim against Executor, as set forth in his complaint as an alternative count to his contract claim, must fail.  Plaintiff sought compensation for the actions and services he rendered to Decedent's estate.  Compl., No. 7291-EQ, 9/26/16, at ¶¶ 71-73.  Section 2701

---

*Wall* Court noted that "[c]laims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done." *Id.*

bars breach of contract claims unless certain requirements are met. 20 Pa.C.S. § 2701. Permitting an unjust enrichment claim to move forward under the circumstances of this case would render Section 2701 a nullity. *Id.*; *id.* cmt.; *cf. In re Estate of Balter*, 703 A.2d at 1040 (affirming judgment on pleadings based on alleged oral contract as plaintiff could not comply with Section 2701); *see generally Wall's Appeal*, 5 A. at 224 (holding courts must closely scrutinize an oral contract for a bequest in exchange for benefits and services rendered). Therefore, the court properly sustained Executor's preliminary objection to Plaintiff's unjust enrichment claim.

*Civil Claims of Conversion and Unjust Enrichment Against Individual*

With respect to his claims against Individual, Plaintiff does not argue that the court erred in concluding that the Orphans' Court should exercise jurisdiction. But Plaintiff does not articulate with clarity his arguments for these particular claims. To the extent those arguments are duplicative of his arguments with respect to his claims against Executor, we have resolved them above.

Plaintiff, however, also contends that the court erred in sustaining the preliminary objection for his conversion claim against Individual on the basis that he "failed to allege lawful ownership of items of personal property that were allegedly converted." Appellant's Brief at 13 (citing R.R., 814 MDA 2017, at 95). We agree, for as we held above with respect to Plaintiff's conversion claim against Executor, Plaintiff adequately alleged all the elements of

conversion against Individual. *See* Compl., No. 7291-EQ, 9/26/16, at ¶¶ 68-70; *McKeeman*, 751 A.2d at 659 n.3. The court erred by granting the *demurrer*.

### Plaintiff's Second Issue in the Civil Action at 814 MDA 2017

Plaintiff, in support of his second issue, contends that the trial court erred in sustaining the Executor's preliminary objections to his breach of contract claim against Executor.[25] Plaintiff's Brief, 814 MDA 2017, at 16. Plaintiff argues that the Executor "stands in the shoes of the Decedent and can be sued on the basis of a contract made by the Decedent prior to the Decedent's death." *Id.* Plaintiff asserts that he articulated the three elements (contract, breach, and damages) for a breach of a contract to care for Decedent in exchange for Decedent's promise to make him the sole heir. *Id.* at 17. Plaintiff admits that he does not have a copy of the 2011 Will purportedly evidencing the contract. *Id.* He claims, however, that Decedent breached this contract by drafting the 2013 Will disinheriting him. *Id.* at 18. Notably, Plaintiff does not argue that any Will fulfills the requirements of Section 2701. *Id.* at 16-18. In fact, Plaintiff does not discuss Section 2701 at all. *Id.*

---

[25] Plaintiff had withdrawn the identical breach of contract and promissory estoppel claims against Individual. N.T. Hr'g, 3/31/17, at 10.

As set forth above, Section 2701 governs the requirements for establishing a contract to designate someone as heir. ***See generally*** 20 Pa.C.S. § 2701. In order to overcome a *demurrer*, Plaintiff must plead any one of the Section 2701(a) requirements. Here, Plaintiff has not argued that his complaint complied with any of the requirements. Plaintiff's Brief, 814 MDA 2017, at 16-18. His complaint does not aver that the 2013 Will stated the material provisions of the contract, specifically that he would be the sole heir. ***See*** 20 Pa.C.S. § 2701(a)(1). Plaintiff's complaint does not state that the 2013 Will expressly referred to their agreement—it could not, because the 2013 Will specifically disinherited him. ***See*** 20 Pa.C.S. § 2701(a)(2); R.R., 814 MDA 2017, at 58-59. His complaint does not identify a writing signed by Decedent before his death memorializing their alleged agreement in compliance with Section 2701(a)(3).[26] We therefore affirm the trial court's order sustaining the preliminary objection but on a different basis.[27] ***See***

---

[26] Even assuming we accepted Plaintiff's reference to the 2010 and 2011 Wills in his complaint as a "writing signed by the decedent evidencing the contract," 20 Pa.C.S. § 2701(a)(3), he is not entitled to relief. Initially, both Wills were revoked by the 2013 Will. We question whether a revoked Will could fulfill Section 2701(a)(3), particularly given the 2013 Will's express provision disinheriting Plaintiff. R.R., 814 MDA 2017, at 58-59.

[27] The trial court had sustained the preliminary objection because Executor was not a party to the contract. Order, 4/17/17, at 2; ***see generally*** 20 Pa.C.S. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.").

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 277 (Pa. Super.

2016) (citation omitted).

**Plaintiff's Third Issue in the Civil Action at 814 MDA 2017**

Plaintiff similarly challenges the trial court's order sustaining Executor's

preliminary objection to Plaintiff's promissory estoppel claim. Plaintiff's Brief,

814 MDA 2017, at 19. Plaintiff maintains that because Executor was standing

"in the shoes of Decedent," and because Plaintiff's complaint averred the

elements of promissory estoppel, the trial court erred. *Id.* at 19-20. Plaintiff

argues that Section 2701 does not apply because Section 2701 addresses a

breach-of-contract claim and not promissory estoppel. *Id.* at 20-21. Indeed,

Plaintiff points out that promissory estoppel "permits an **equitable** remedy to

a contract dispute and makes otherwise unenforceable agreements binding."

*Id.* (emphasis added). Plaintiff posits that even if Section 2701 does apply,

he identified two prior instruments—the 2010 and 2011 Wills—evidencing

Decedent's promise. *Id.* at 21.

In *Kreutzer v. Monterey Cty. Herald Co.*, 747 A.2d 358 (Pa. 2000),

the Pennsylvania Supreme Court explained that promissory estoppel is

grounded in equity. *Id.* at 361;[28] *Crouse v. Cyclops Indus.*, 745 A.2d 606,

---

[28] The Court in *Kreutzer* explained as follows:

> [Pennsylvania has long] recognized the equitable basis of
> promissory estoppel and its origins in the more ancient concept of
> equitable estoppel:

610 (Pa. 2000) ("As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute").[29]  Equity, however, must follow the law.  **Murray**, 169 A.3d at 93.

In **Matter of Estate of Cosman**, 475 A.2d 659 (N.J. Super. Ct. App. Div. 1984),[30] Carmen Cosman and John Herbison executed reciprocal Wills in

> Just as the law has consistently upheld the doctrine that, under given circumstances, a person may be estopped by his conduct, his statements, or even his silence, if another has thereby been induced to act to his detriment, so from the earliest times there was recognized the principle that an estoppel might similarly arise from the making of a promise, even though without consideration, if it was intended that the promise be relied upon and in fact it was relied upon.  The basis of promissory estoppel is not so much one of contract, with a substitute for consideration, as an application of the general principle of estoppel to certain situations.  It is important to bear in mind that, as already pointed out, the doctrine is much older in its origin and applications than the terminology now employed to describe it.

**Kreutzer**, 747 A.2d at 361 (brackets, ellipses, citation, and formatting omitted).

[29] The **Crouse** Court held that the doctrine of promissory estoppel sounds in contract law for purposes of the application of statute of limitations only. **Crouse**, 745 A.2d at 610.

[30] "[I]t is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts." **Eckman v. Erie Ins. Exch.**, 21 A.3d 1203, 1207 (Pa. Super. 2003).  The **Eckman** Court further acknowledged that our Courts "recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." **Id.** (citation omitted).

1981, devising their respective properties to each other and if one party predeceased the other party, then their seven children would inherit. *Id.* at 660. Herbison passed away and per his Will, Cosman inherited his property. *Id.* Cosman subsequently revoked her Will and executed a new Will in 1982 leaving her estate to two children and a grandson. *Id.* Cosman died in 1983, and her Will was admitted to probate. *Id.* at 660-61.

The remaining five children sued, raising arguments of equitable fraud and promissory estoppel, in support of their position that Cosman and Herbison had, in essence, orally agreed in 1981 to leave their estate to all seven children. *Id.* at 661-62. Following a bench trial, the trial court found in favor of the five children, notwithstanding the absence of any written proof, in contravention of N.J. Stat. Ann. § 3A:2A-19,[31] which is materially identical to 20 Pa.C.S. § 2701. *Id.* at 661.

The appellate court reversed the trial court:

None of the statutory requisites are established by the evidence in the case. The contract was oral and the wills were silent as to

_____

[31] Section 3A:2A-19 states in pertinent part:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this act, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract.

N.J. Stat. Ann. § 3A:2A-19.

its existence. The Legislature has seen fit to prescribe the "only" way such a contract may be legally established. The statute's clear language leaves no room for judicial construction. This oral agreement is not enforceable. The principles of equitable fraud and promissory estoppel urged by respondents are unavailing in the face of the unequivocal legislative declaration. Were we to enforce such principles we would nullify the clear purpose of the statute.

*Id.* at 662.

Here, Plaintiff concedes he is seeking an equitable remedy. Plaintiff's Brief, 814 MDA 2017, at 20-21. But much like Plaintiff's unjust enrichment claim, his promissory estoppel claim cannot overcome a demurrer, as the cause of action—for an equitable remedy—cannot be sustained. *See Murray*, 169 A.3d at 93; *Mazur*, 926 A.2d at 1268 n.10. We agree with the rationale advanced by the *Cosman* Court that permitting Plaintiff to recover under equitable claims for relief, *e.g.*, promissory estoppel, would subvert Section 2701, as the plaintiffs in *Cosman* attempted to do with the New Jersey equivalent to Section 2701. *See Cosman*, 475 A.2d at 662. To paraphrase the *Cosman* Court, were this Court to permit Plaintiff to proceed with his equitable promissory estoppel claim, we would nullify the clear purpose of Section 2701. *See id.* Accordingly, because Plaintiff could not recover under his cause of action, we affirm the order sustaining the *demurrer*. *See Weinar*, 176 A.3d at 925.

**Plaintiff's Claims in the Orphans' Court Action at 1089 MDA 2017**

Having resolved Plaintiff's appeal from the civil action at 814 MDA 2017, we turn to resolving his appeal from the order entered in the Orphans' Court

- 34 -

action at 1089 MDA 2017 on June 8, 2017. To briefly recap, Plaintiff had raised three claims in his petition for citation *sur* appeal: lack of testamentary capacity; promissory estoppel (identical to his civil action); and conversion (identical to his civil action). Neither the promissory estoppel nor conversion claims attacked the validity of the 2013 Will. For relief, Plaintiff requested that the Orphans' Court issue a citation under 20 Pa.C.S. § 764 to all parties in interest to show cause why the appeal should not be granted and the decree of the Register of Wills set aside. R.R., 1089 MDA 2017, at 10.

Executor filed preliminary objections only to promissory estoppel and conversion, which the court sustained. The court provided no explanation for sustaining the preliminary objection for the promissory estoppel claim and, with respect to the conversion claim, found that "Defendant [sic] had received the property to which he is entitled." Order, 4/17/17, at 3. Although there was an outstanding claim for lack of testamentary capacity, the Orphans' Court inexplicably dismissed with prejudice the petition for citation *sur* appeal. *Id.*

Executor filed an answer to the outstanding claim of lack of testamentary capacity, which he served on all interested parties, including the named beneficiaries of the 2013 Will, and the Orphans' Court *sua sponte* dismissed the claim. Order, 6/8/17, at 1. Plaintiff timely appealed on Monday, July 10, 2017. The Orphans' Court did not order Plaintiff to comply with Pa.R.A.P. 1925(b), but filed a Pa.R.A.P. 1925(a) opinion.

Plaintiff raises the following issues:

1. Whether the lower court erred in granting preliminary objections for "failure to conform to law of court" with regard to the claim of conversion?

2. Whether the lower court erred in granting preliminary objections for "failure to conform to law of court" with regard to the claim of promissory estoppel?

3. Whether the lower court erred in dismissing the count of the petition alleged lack of testamentary capacity based on the answer of the Estate?

Plaintiff's Brief, 1089 MDA 2017, at 4.

### Plaintiff's First and Second Issues in the Orphans' Court Action at 1089 MDA 2017

We summarize Plaintiff's arguments for his first two issues together. Plaintiff contends that the Orphans' Court exercised proper jurisdiction over his conversion claim in 2216-0580 regarding his personal property. *Id.* at 12 (citing 20 Pa.C.S. § 908 and *In re Estate of Whitley*, 50 A.3d 203, 208 (Pa. Super. 2012)). Plaintiff reasons that only by appealing "from the decree of probate," can he "properly bring the validity of the will within the jurisdiction of the Orphans' Court." *Id.* He also disputes the application of Orphans' Court Rule 2.7 (titled, "Objections to Accounts or Petitions for Adjudication/Statements of Proposed Distribution"), which the Executor had invoked in his preliminary objections. *Id.*

Plaintiff contends that his conversion claim adhered to the law and was pled properly. *Id.* at 10-11. He objects to the Orphans' Court conclusion that he received the property to which he is entitled because nothing within the

- 36 -

four corners of his petition supports that determination. *Id.* at 11. Plaintiff argues that in order to arrive at that conclusion, the Orphans' Court exceeded its scope of review. *Id.* at 11-12.

For his promissory estoppel claim in 2216-0580, Plaintiff argues that he pled the necessary elements to assert that he was entitled to Decedent's entire estate. *Id.* at 13-14. Appellant reiterates his appellate argument for the claim of promissory estoppel in 7291-EQ and argues that Executor's reliance on 20 Pa.C.S. § 2701 is misplaced. *Id.* at 14-15.

The Executor counters that Appellant's claims for conversion and promissory estoppel in 2216-0580 are not cognizable in an appeal from the entry of a decree by the Register of Wills. According to Executor, under **Whitley**, 20 Pa.C.S. § 908 is limited to challenges to the validity of the 2013 Will. Executor's Brief, 1089 MDA 2017, at 13. Plaintiff's claims for conversion and promissory estoppel, Executor reasons, do not challenge the validity of the 2013 Will, as Plaintiff has not been aggrieved by the Register of Wills. **Id.** at 13, 19-20. Executor thus maintains that Plaintiff's claims must be raised under Orphans' Court Rule 2.7, which provides for the filing of objections to an accounting or proposed distribution. *Id.* at 13, 19.

Briefly, the standard of review for an appeal from an order resolving preliminary objections is an error of law. *See Weinar*, 176 A.3d at 925.

Section 908 follows:

**(a) When allowed.—**Any party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of

the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree: Provided, [t]hat the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it. The court, upon petition of a party in interest, may limit the time for appeal to three months.

20 Pa.C.S. § 908.

The comment to Section 908 provides:

The addition of the phrase "seeking to challenge the probate of a will" in subsection (a) is designed to preserve the intent of the original enactments of this section and § 3138, which was to provide parties in interest with a way to challenge a will that had already been probated by the register, including the ability to offer a later will or codicil even though the period for the register to amend the record under § 3138 has expired.

*Id.* cmt;[32] *see also* 20 Pa.C.S. § 3133(b) ("The probate of a will shall be conclusive as to all property, real or personal, devised or bequeathed by it, unless an appeal shall be taken from probate as provided in section 908 (relating to appeals)"); *In re Hickman's Estate*, 162 A. 168, 170 (Pa. 1932) (holding, "probate is not conclusive as to extraneous matters or matters dehors the record; nor is it conclusive as to matters not involved in, nor properly determinable upon, probate." (citations omitted)); *Estate of Pew*, 655 A.2d 521, 547 (Pa. Super. 1994) (same).

In *In re Estate of Thompson*, 481 A.2d 655 (Pa. Super. 1984), Thomas Curry appealed under Section 908, "as a party-in-interest aggrieved

_____

[32] Section 3138 addresses later Wills or codicils. 20 Pa.C.S. § 3138.

by the decree of the register of wills probating a will of the decedent executed in 1981, of which [Curry] was not a beneficiary." *Id.* at 656. Curry petitioned the court to substitute an earlier 1958 Will, which had named him a beneficiary. *Id.* The decedent's estate filed preliminary objections in the nature of a *demurrer*, which the Orphans' Court sustained and dismissed Curry's petition for citation *sur* appeal. *Id.* Curry appealed.

> The *Thompson* Court observed:

> In disposing of this appeal, we must assume that decedent's 1958 will was executed pursuant to an enforceable contract and that the execution of the 1981 will, which revoked all prior wills, was an anticipatory breach of that contract which ripened into a breach upon decedent's death. The issue then becomes whether probate of the second will should be set aside and the original will substituted therefor on appeal under 20 Pa.C.S.A. § 908. [The estate] claims that the proper method of attack is to file an action in assumpsit for breach of contract or to contest the schedule of distribution filed in accordance with the terms of the 1981 will.

*Id.* at 656-57 (footnote omitted).

> The Court, in *Thompson*, then explained which claims should properly

lie from a decision of the Register of Wills to probate a Will:

> A will in violation of a contract to make a will should be probated. The contract is a question of distribution.

> It is well established in Pennsylvania that an agreement to make a will or to devise one's property to a particular person or for a particular purpose is binding and irrevocable when supported by what the law regards as valid consideration. Such agreements are not testamentary in nature but are rather contracts with part performance postponed until the death of one of the parties.

*Id.* at 657 (quotation marks, citations, and emphasis omitted).

The **Thompson** Court affirmed the Orphans' Court order sustaining the preliminary objections because the decision to admit a Will into probate without regard for its terms is distinguishable from the distribution of the estate:

> The probate of decedent's last will and testament was properly within the register of wills' jurisdiction. . . . If a particular writing meets the statutory requirements for a will, it is properly admitted into probate. However, the probate of a will without regard to its provisions is one thing, distribution of the estate of the testator in accordance with its terms is another. The former is for the register; the latter is none of his concern.

*Id.* (emphasis, quotation marks, brackets, and citation omitted); *accord*

*Martin's Estate*, 36 A.2d 786, 788 (Pa. 1944) ("Distribution is for the court alone, and on distribution, and not before, is the validity of the provisions of a will to be passed upon."); *compare* 20 Pa.C.S. § 901 (stating Register of Wills has "jurisdiction of the probate of wills, the grant of letters to a personal representative, and any other matter as provided by law"), *with* 20 Pa.C.S. § 711 (Orphans' Court "shall" have jurisdiction over the "administration and distribution of the real and personal property of decedents' estates").

> If a particular writing meets the statutory requirements for a will, then the register may properly admit it to probate even if the will is in violation of a contract to make a will. However, matters concerning construction of the will and distribution of the estate are outside the register's jurisdiction.

31 Standard Pa. Practice 2d § 149.7 (footnotes to case citations omitted); *accord* 9 Summ. Pa. Jur. 2d Probate, Estates, and Trusts § 1:146 (2d ed.).

In contrast to **Thompson**, the appellants in **Whitley** challenged the validity of the Will, on the basis that the executor exercised undue influence on the decedent. **Whitley**, 50 A.3d at 205-06. Instead of appealing from the decree of the Register of Wills admitting the Will to probate, the appellants challenged the validity of the Will by objecting to the executor's final accounting. **Id.** at 207. The executor countered that the appellant's appeal was improper because "an appeal from probate is the exclusive method to challenge the validity of a will." **Id.**

The **Whitley** Court explained:

When a will is admitted to probate, the legal presumption arises that the will is a last will and is the free and voluntary expression of a testator.

Such probate is conclusive as to all questions and disputes touching the will as fall within the jurisdiction of the register, as for instance, questions of fraud in the procurement of the will, whether by undue influence, restraint, or duress of any kind.

When a will has been admitted to probate, its validity has been judicially decided, and it can be set aside only by an appeal, being unimpeachable in any other proceeding. Only an appeal from the decree of probate can properly bring the validity of the will within the jurisdiction of the Orphans' Court. Any attempt to contest a will except by means of an appeal from probate constitutes an impermissible collateral attack on the will. [**Bunce v. Galbrath**, 112 A. 143, 144 (Pa. 1920)].

**Id.** at 208 (citations, quotation marks, and emphasis omitted). The **Whitley** Court's holding, of course, must be read in context of the issue raised and the law cited, as well as the jurisdictional statutes of 20 Pa.C.S. § 711 and 901, set forth above, and Orphans' Court Rules 2.7 and 2.8, which permits parties

- 41 -

to file pleadings and objections regarding distribution of an estate. *See* Pa.O.C.R. 2.7-2.8.

In *Bunce*, the Pennsylvania Supreme Court addressed whether, after a Will has been probated, the plaintiff could challenge the validity of the Will on the basis that the defendant unduly influenced the testator. *Bunce*, 112 A. at 144. The trial court had sustained the *demurrer* because the plaintiff's claim was an untimely collateral attack on the testator's Will as the Will had been admitted to probate and the plaintiff failed to timely appeal from probate. *Id.*

> Such probate is conclusive as to all questions and disputes touching the will as fall within the jurisdiction of the register, as, for instance, questions of fraud in the procurement of the will, whether by undue influence, restraint, or duress of any kind. When a last will has been admitted to probate, the legal presumption at once arises that the will so probated is a last will, and is the free and voluntary expression of a testator, of sound and disposing mind and understanding, as to the disposition the testator desired to make of his property upon his death. Where the decree of the register is unappealed from within the period allowed for such appeal, the legal presumption becomes conclusive, and it makes an end to such questions as were passed upon, or were within the jurisdictional power of the register to consider, touching the validity of the will.

*Id.*

The *Bunce* Court, however, did not hold that the **only** way to contest a Will is by appealing from the decree of the Register of Wills. The *Bunce* Court held that when challenging the validity of the Will itself, *e.g.*, a claim of undue influence, it is proper to appeal from the decree of the Register of Wills admitting the Will to probate. *Id.* But the Register of Wills does not have

jurisdiction over the administration and distribution of an estate, 20 Pa.C.S. § 711, and thus could never issue a legitimate order outside its limited jurisdiction. *See* 20 Pa.C.S. § 908; *Hickman's Estate*, 162 A. at 170 (probate cannot render conclusive matters outside its jurisdiction or record); *Estate of Pew*, 655 A.2d at 547 (same).

Further, as Executor recognized, Orphans' Court Rule 2.7 permits the filing of objections to an accounting or proposed distribution. Executor's Brief, 1089 MDA 2017, at 13, 19; Pa.O.C.R. 2.7. We add that Orphans' Court Rule 2.8 also specifies the pleadings that can be filed after objections are filed. Pa.O.C.R. 2.8. In sum, *Whitley* and *Bunce* resolve the appealability of an issue of the validity of the Will and not the appealability of an issue regarding the administration and distribution of an estate.[33] *See Martin's Estate*, 36 A.2d at 788; *Thompson*, 481 A.2d at 657.

Here, Section 908 limits the Register of Wills' jurisdiction to the probate of a Will. *See* 20 Pa.C.S. § 908. The Orphans' Court, and not the Register of Wills, has jurisdiction over the administration and distribution of an estate. *See* 20 Pa.C.S. § 711. Decedent's 2013 Will has been probated and any attack on the validity of the Will must be from an appeal from probate. *See* 20 Pa.C.S. § 908; *Whitley*, 50 A.3d at 208.

---

[33] Even if they had, the Pennsylvania Supreme Court held otherwise in *Martin's Estate*. *See Martin's Estate*, 36 A.2d at 788.

But the distribution of Decedent's estate, as set forth in the 2013 Will, is a jurisdictionally distinct matter not within the Register of Wills' purview. *See* Pa.C.S. § 711; *Hickman's Estate*, 162 A. at 170. Like the plaintiff in *Thompson*, Plaintiff is seeking to be the sole beneficiary of Decedent's 2013 Will based on a claim of promissory estoppel. *See Thompson*, 481 A.2d at 656. We agree with the rationale of the *Thompson* Court that the probate of Decedent's 2013 Will without regard to its provisions is one thing. Distribution of Decedent's estate in accordance with the terms of the 2013 Will is quite another. *See id.* at 657; *accord Martin's Estate*, 36 A.2d at 788.

Plaintiff's claim of promissory estoppel is a question of distribution—not probate—and is for the Orphans' Court, and not for the Register of Wills, to resolve. *See Thompson*, 481 A.2d at 657; *accord Martin's Estate*, 36 A.2d at 788. Plaintiff's conversion claim, similarly, is a question of distribution. He had pled that Decedent's estate improperly converted his personal property and planned to sell the property for the estate's benefit. R.R., 1089 MDA 2017, at 9-10. Plaintiff cannot raise his promissory estoppel and conversion claims in an appeal from the Register of Wills' decree probating a Will. *See Martin's Estate*, 36 A.2d at 788; *Thompson*, 481 A.2d at 657. Plaintiff must raise these allegations in a lawsuit for breach of contract in the Orphans' Court

division or file an objection to a proposed schedule of distribution.[34] **See Thompson**, 481 A.2d at 657. We therefore affirm the Orphans' Court order sustaining the *demurrer* to Plaintiff's promissory estoppel and conversion claims, albeit on different grounds. **See Weinar**, 176 A.3d at 925; **Mariner Chestnut Partners**, 152 A.3d at 277.

### Plaintiff's Third Issue in the Orphans' Court Action at 1089 MDA 2017

Lastly, we address Plaintiff's final issue: the court erred in *sua sponte* dismissing his claim for lack of testamentary capacity. Plaintiff's Brief, 1089 MDA 2017, at 16. Plaintiff asserts the court held no hearing and received no evidence on Decedent's testamentary capacity prior to dismissing Plaintiff's claim. *Id.* at 16-17. Plaintiff summarizes the procedures for challenging a Will based on testamentary incapacity and contends the court failed to comply. *Id.* at 17.

Executor counters that although he did not file a preliminary objection to this claim, the Orphans' Court's *sua sponte* dismissal was proper. Executor's Brief, 1089 MDA 2017, at 25. Executor now explains that Plaintiff's testamentary capacity claim cannot move forward because Plaintiff failed to obtain jurisdiction over the other named beneficiaries in the 2013 Will. *Id.* at 26. According to Executor, he is not responsible for defending the 2013 Will—

---

[34] We therefore need not address Plaintiff's remaining arguments for these two issues given his claims fall outside the scope of the action.

the beneficiaries are because they are interested parties. *Id.* at 26-27. Executor argues that because the beneficiaries are necessary parties who have not been served, the Orphans' Court has no jurisdiction. *Id.* at 27-28. Executor concludes that Plaintiff cannot cure this defect because the one-year time period for appealing from the decree of probate has long expired. *Id.* at 28. In support of his arguments, the Executor does not cite any Pennsylvania Orphans' Court Rules, but refers this Court to Section 908 and caselaw predating the enactment of Title 20 and the current Orphans' Court Rules.

The opinion of the Orphans' Court disposes of Plaintiff's claim in two sentences: "Said [2013] will was executed with the aid of a licensed, reputable attorney who understands the importance of testamentary capacity when executing a will. We found no evidence to suggest that [Executor] failed to sufficiently determine the decedent's testamentary capacity." R.R., 1089 MDA 2017, at 131. The Orphans' Court did not cite to anything in the record substantiating its finding of fact.

The standard of review of the court's *sua sponte* order dismissing a petition for citation *sur* appeal is unclear. Under the circumstances, because Executor filed an answer, we deem it appropriate to consider this an appeal from a judgment on the pleadings:

> As our Supreme Court has explained, appellate review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. In conducting this review, we look only to the pleadings and any documents properly attached thereto. Judgment on the

pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

In passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***John T. Gallaher Timber Transfer v. Hamilton***, 932 A.2d 963, 967 (Pa. Super. 2007) (citation and formatting omitted).

Initially, by way of background, a claim that the testator lacked testamentary capacity is properly raised in a petition for citation *sur* appeal from the Register of Will's decree probating a Will. 31 Standard Pa. Practice 2d § 149:22.

Section 764 governs jurisdiction over a person via citation:

Jurisdiction of the person shall be obtained by citation to be **awarded by the orphans' court division** upon application of any party in interest. The citation shall direct the party named therein to file a complete answer under oath to the averments of the petition on or before a day certain, which shall be not less than ten days after the service thereof, and to show cause as the decree of the division shall provide.

20 Pa.C.S. § 764 (emphasis added); ***In re Hicks' Estate***, 199 A.2d 283, 285 (Pa. 1964) (holding, under statutory predecessor to 20 Pa.C.S. § 764, that in "the orphans' court, a citation is the proper process by which initial personal jurisdiction over the person is obtained.").

- 47 -

Pennsylvania Orphans' Court Rule 3.5 mirrors the statutory requirement:

**(a) Citation Practice.**

(1) When personal jurisdiction is required and has not previously been obtained or conferred by statute, or when a citation is otherwise required by statute, the petition shall include a preliminary decree for the issuance of a citation to those interested parties for whom a citation is necessary to show cause why the relief requested in the petition should not be granted.

(2) The citation to obtain personal jurisdiction and a copy of the petition shall be served upon each cited party at least 20 days before the date when a responsive pleading is due, in the same manner as service of original process under Pa.R.C.P. Nos. 402 through 404, Pa.R.C.P. No. 420, and Pa.R.C.P. Nos. 422 through 424 inclusive. If service cannot be made under the foregoing rules, the court may order service by publication in accordance with Pa.R.C.P. No. 430. Service of a citation as original process shall not be permitted by electronic means, unless agreed to by the respondent. . . .

Pa.O.C.R. 3.5(a).

Here, Plaintiff specifically requested that the Orphans' Court issue a citation pursuant to Section 764 to all parties in interest. R.R., 1089 MDA 2017, at 10. The Orphans' Court did not grant the preliminary request for a citation because it *sua sponte* dismissed Plaintiff's petition out of hand. Although Executor faults Plaintiff for not serving all interested parties, under Section 764 and Pa.O.C.R. 3.5(a), the Orphans' Court should award or issue the citation, which in turn, would be served on the interested party, thereby

perfecting personal jurisdiction.[35]  ***See*** 20 Pa.C.S. § 764; Pa.O.C.R. 3.5(a);

***In re Hicks' Estate***, 199 A.2d at 285.  We add that Executor improperly

applies the one-year timeframe for filing an appeal from a decree of the

Register of Wills, 20 Pa.C.S. § 908, as also applying to the exercise of personal

jurisdiction.

The Orphans' Court, however, instead of permitting the petition to

proceed and issuing a citation notifying all interested parties of the dispute,

ordered that Plaintiff's petition be dismissed.  As noted above, the Orphans'

Court stated it "found no evidence to suggest that [Executor] failed to

sufficiently determine the decedent's testamentary capacity."  R.R., 1089 MDA

2017, at 131.  The court, however, held no evidentiary hearing.  Neither the

docket nor record reflects any hearing at which any party or witness, including

Executor, testified or proffered any evidence as to Decedent's testamentary

capacity.  It is beyond cavil that the Orphans' Court cannot make any findings

of fact necessary to the adjudication without a hearing, as that is reversible

error.  ***See Hamilton***, 932 A.2d at 967.

Moreover, we add that the interested parties' absence from this appeal

does not necessarily warrant dismissal.  In ***In re Thomas' Estate***, 36 A.2d

---

[35] We do not hold that the Orphans' Court was obligated to issue such a citation.

819 (Pa. 1944), the Pennsylvania Supreme Court summarized the applicable

law in resolving a similar situation:

> It appears in this case that the heirs and next of kin had not been joined as parties. We held in **Miller's Estate**, 159 Pa. 562, 28 A. 441, that: "Where the heirs at law of a decedent are not voluntarily parties to an issue devisavit vel non, or have not been brought in by citation the orphans' court has no jurisdiction to settle finally the validity of the will against such of the heirs as are not parties to the proceedings." In **Miller's Estate**, 166 Pa. 97, at page 109, 31 A. 58, at page 62, we said: "The act of 1832 prescribes the form of the precept to be issued by the register to the judges of the court of common pleas, in which is the direction that an issue be framed between the proponent and the caveator upon the merits of the controversy between them, and that the **said judges cause all other persons** who may be interested in the estate of the alleged testator, "as heirs, relations, or next of kin, devisees, legatees, or executors, to be warned that they may come into our said court and become parties to the said action if they shall see cause."
>
> However, the omission referred to does not warrant our reversing the decree of the court below.

*Id.* at 820 (emphasis added); *accord In re Cohen's Estate*, 51 A.2d 704,

707 (Pa. 1947) (noting, "that all parties, whether as beneficiaries under the

will or heirs and next of kin, have not been joined. The proper practice is to

join all such parties. This error in practice, however, is not necessarily

reversible error." (citations omitted)).[36]

Accordingly, for all these reasons, the orders are affirmed in part and

reversed in part. The court erred in sustaining Executor's preliminary

---

[36] In **Cohen's Estate**, only two of the numerous beneficiaries were joined. **In re Cohen's Estate**, 51 A.2d at 705.

objections to Plaintiff's conversion claim against Executor and against Individual at the appeal docketed at 814 MDA 2017. The court erred in dismissing Plaintiff's lack of testamentary capacity claim at the appeal docketed at 1089 MDA 2017. The orders are otherwise affirmed.[37]

Order at 814 MDA 2017 affirmed in part and reversed in part. Order at 1089 MDA 2017 reversed to the extent the Orphans' Court *sua sponte* dismissed Plaintiff's claim for lack of testamentary capacity. Case remanded. Parties ordered to ensure Orphans' Court exercises personal jurisdiction over relevant parties. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2018

---

[37] We reiterate that it was improper for the court to dismiss a claim that should have been transferred to and resolved by the Orphans' Court, but elect to disregard the error to address Plaintiff's appellate issues on their merits only because the same judge presided over both actions.